# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**VICKI GUNTER,**
**Claimant Below, Petitioner**

**FILED**
March 21, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No.  17-0959** (BOR Appeal No. 2051900)
(Claim No. 2015020836)

**SUMMERS COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vicki Gunter, by John Shumate Jr., her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Summers County Board of Education, by Marion Ray, its attorney, filed a timely response.

The issue on appeal is whether additional medical treatment should be authorized and whether an additional diagnosis should be allowed. On September 9, 2016, the claims administrator denied a request for a referral to John Schmidt, M.D. On October 13, 2016, the claims administrator denied a request to add radiculopathy of the lumbar region as a secondary condition in the claim. The Office of Judges affirmed both of the decisions in its March 27, 2017, Order. The Order was affirmed by the Board of Review on September 29, 2017.  The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Gunter, a kitchen worker for Summers County Board of Education, injured her back on January 29, 2015, when she slipped on the floor and fell. Ms. Gunter was treated in the emergency room at Summers County ARH Hospital for back pain after a fall at work. X-rays of the lumbar spine were normal. Ms. Gunter was diagnosed with a lumbar sprain. The claim was accepted as compensable for a lumbar sprain/strain on February 6, 2015.

1

Ms. Gunter sought treatment at the Family Care Clinic in February and March of 2015 for continued lower back pain radiating to her right thigh. Ms. Gunter had lumbar paraspinal tenderness and sacroiliac tenderness. She was given an injection, prescribed medication, and referred for physical therapy and a lumbar spine MRI. Ms. Gunter participated in physical therapy, which did little to ease her pain. The lumbar spine MRI showed mild degenerative disc disease and a mild bulging disc in the lumbar spine.

On May 6, 2015, Ms. Gunter was seen by John Schmidt, M.D., in consultation for her low back and right leg pain. Dr. Schmidt noted that Ms. Gunter's leg pain radiated posteriorly down her leg to just below the knee and she also felt that her right leg was weak. The pain started after a fall at work in January and had progressively worsened. It was made worse by sitting or standing too long as well as with physical activity. Ms. Gunter walked with a non-antalgic gait. The range of motion of the joints was full, painless, and without instability. She had normal muscle tone without atrophy, swelling, or tenderness, and her deep tendon reflexes were equal and intact. There were no pathologic reflexes, spasticity, or clonus. Straight leg testing produced back pain. Dr. Schmidt's impression was low back pain and lumbar radiculopathy. He recommended a referral to pain management and continued physical therapy.

Ms. Gunter was seen by Brian Yee, M.D., a pain specialist, on July 14, 2015, for an evaluation of lower back and right leg pain. Ms. Gunter complained of constant pain in the right lower back which radiated down the right buttock and posterior right leg to the knee. Dr. Yee noted her heel and toe walking were abnormal and straight leg testing was unable to be completed. He also noted Ms. Gunter's effort during motor strength testing was extremely poor. Dr. Yee diagnosed lumbar sprain, lumbar disc degeneration, and lumbar radiculopathy and recommended she undergo EMG/NCS testing. Dr. Yee noted Ms. Gunter had excessive pain behaviors and more pain and weakness than would be expected based on the imaging studies.

Barry Vaught, M.D., performed EMG/NCS testing on September 23, 2015. It revealed no electrophysiologic evidence of lumbosacral radiculopathy on either side. Dr. Yee saw Ms. Gunter on October 15, 2015, for follow-up. Ms. Gunter complained of increased pain with sitting, standing, and walking, as well as difficulty raising her right leg. Dr. Yee listed her active problems as low back pain, lumbar intervertebral disc degeneration, lumbar intervertebral disc displacement, and lumbar radiculopathy. He noted there were no significant findings on the EMG and only minimal findings on the MRI. He found her pain complaints to be excessive. Dr. Yee diagnosed lumbar sprain, lumbar disc degeneration, bulging lumbar disc, and lumbar radiculopathy. He recommended work hardening and physical therapy.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on November 17, 2015. He diagnosed a lumbar sprain and opined that Ms. Gunter had reached maximum medical improvement. Dr. Mukkamala did not believe Ms. Gunter needed any additional medical treatment for the compensable lumbar sprain.

On December 8, 2015, Ms. Gunter was treated at the Family Care Clinic. The primary diagnosis was lumbar spine sprain and the secondary diagnosis was lumbar radiculopathy. The plan was to refer Ms. Gunter back to Dr. Schmidt's office. On March 8, 2016, Dr. Yee diagnosed

active problems of low back pain, lumbar disc degeneration, lumbar disc displacement, and lumbar radiculopathy. He noted extreme pain behaviors and recommended Ms. Gunter undergo an EMG of the lower extremities, a lumbar MRI, and a return visit to Dr. Schmidt for a consultation. Dr. Yee diagnosed lumbar sprain, lumbar disc degeneration, and lumbar radiculopathy.

A June 3, 2016, lumbar MRI revealed degenerative disc disease, facet disease, and spondylosis. There was disc bulging at L1-L2 and L2-L3 without nerve root compromise; L3-L4 disc bulge and facet degenerative changes resulting in mild lateral spinal canal stenosis; L4-L5 disc bulge with contact with the right-sided nerve roots; facet degenerative changes resulting in mild lateral canal stenosis; L5-S1 central disc protrusion with contact at the bilateral exiting nerve roots; and sacroiliac joint arthropathy. Dr. Vaught performed additional EMG/NCS testing on June 7, 2016, which revealed reduced activation in the right likely due to pain and poor effort. There were no neuropathic findings in the bilateral lower extremities.

During a June 14, 2016, visit with Dr. Yee, it was noted that Ms. Gunter had tenderness to palpation of the lumbar and thoracic spines as well as right sacroiliac joint tenderness. Dr. Yee diagnosed lumbar disc degeneration, a bulging lumbar disc, and lumbar radiculopathy. He recommended a referral to Dr. Schmidt for her intervertebral disc degeneration. Dr. Yee observed Ms. Gunter as she left his office. She had minimal gait disturbance with complete heel/toe walking, no pelvic tilt compensating for her weak hip flexion, and no hip drop.

Syam Stoll, M.D., performed a records review regarding Ms. Gunter's request for a referral to Dr. Schmidt on June 27, 2016. Dr. Stoll opined that the referral may be indicated due to degenerative spine disease, not due to the injury. Ms. Gunter had already been thoroughly evaluated by Dr. Schmidt.

On August 1, 2016, Ms. Lane completed a Diagnosis Update listing lumbar strain as the primary diagnosis and lumbar radiculopathy as the secondary diagnosis. A list of symptoms was provided in the space designated for information on how the diagnoses relate to the compensable injury. Dr. Stoll performed a medical records review regarding Ms. Gunter's request to add lumbar radiculopathy as a compensable condition on August 29, 2016. In his opinion, the objective medical evidence did not support the diagnosis of lumbar radiculopathy. Ms. Gunter's subjective complaints of radiculopathy were not supported by the bilateral EMG/NCS testing and the MRI findings showed extensive pre-existing lumbar spondylosis.

On September 6, 2016, the claims administrator denied the request for a referral to Dr. Schmidt. On October 13, 2016, the claims administrator denied the request to add radiculopathy of the lumbar region as a secondary condition in the claim.

Marsha Lee Bailey, M.D., performed a medical records review on November 4, 2016. In her opinion, the findings on the MRIs were degenerative in nature. The second MRI documents the progression of the degenerative changes. The MRI showed no injury related changes. She agreed with the denial of lumbar radiculopathy as a compensable condition. She noted that not all leg pain was radicular, Ms. Gunter's pain did not follow a dermatomal pattern, she had no

evidence of objective neurologic deficit, and Dr. Yee had documented her excessive pain behaviors. A January 4, 2017, lumbar spine MRI showed L3-L4 disc bulging; L4-L5 disc protrusion with mild central canal stenosis and left neural foraminal stenosis; L5-S1 left posterior lateral disc protrusion with left neural foramina stenosis; and L2 to L5-S1 disc degeneration.

The Office of Judges affirmed the claims administrator's denial of authorization for a second referral to Dr. Schmidt and the denial of the addition of lumbar radiculopathy as a compensable condition on March 27, 2017. It found that the weight of the evidence did not support a diagnosis of lumbar radiculopathy. Ms. Gunter had two EMG/NCS studies to address the diagnosis of lumbar radiculopathy. However, neither test showed objective electrophysiological evidence of lumbar radiculopathy. Additionally, Ms. Gunter had no evidence of neurological deficits on examination. While Dr. Yee diagnosed radiculopathy he also noted Ms. Gunter's very poor effort with testing, as well as her excessive pain complaints. The Office of Judges found that Dr. Schmidt and Ms. Lane also diagnosed radiculopathy. However, their clinical findings did not support the diagnosis.

Turning to the issue of the referral to Dr. Schmidt, the Office of Judges determined that the weight of the medical evidence did not support Dr. Yee's request for a repeat referral to Dr. Schmidt. It noted the claim was only compensable for a lumbar sprain. Dr. Yee diagnosed lumbar disc degeneration, bulging lumbar disc, and lumbar radiculopathy, none of which have been determined to be compensable. The Office of Judges determined that Ms. Gunter failed to show how the repeat referral to a neurosurgeon was required for the treatment of the compensable lumbar sprain. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 29, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Ms. Gunter sustained a lumbar sprain/strain when she slipped at work. The lumbar sprain/strain has resolved. She is now seeking treatment for conditions that have been determined to be non-compensable at best and non-existent at worst. Ms. Gunter has no objective clinical findings of radiculopathy. Moreover, the referral to Dr. Schmidt was not requested for treatment of the resolved lumbar sprain/strain. Therefore, the Board of Review did not err in affirming the denial of the request to add radiculopathy as compensable and the denial of the second referral to Dr. Schmidt.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: March 21, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker